IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RODERICK B. SANDERS,

    Defendant.

Case No. 19-20037-01-DDC

## MEMORANDUM AND ORDER

Defendant Roderick B. Sanders has moved for review of the court's Detention Order. *See* Doc. 11 (seeking review of Doc. 10). Initially, Mr. Sanders asserted the court should release him because he is not a flight risk or a danger to the community. Then, he filed a Legal Memorandum seeking temporary release under 18 U.S.C. § 3142(i). Doc. 15; Doc. 21. He argues the court should grant him temporary release because of the COVID-19 pandemic. The government opposes Mr. Sanders's motion. Doc. 16. The government has charged Mr. Sanders with various drug trafficking offenses involving cocaine base, marijuana, and methamphetamine (Counts 1, 2, 3); possession of 18 firearms as a prohibited person (Count 4); possession of firearms in furtherance of drug-trafficking offenses (Count 5); and maintaining a residence for drug trafficking (Count 6). Doc. 1.

In his Detention Order (Doc. 10), Magistrate Judge O'Hara concluded that the government had shown, by clear and convincing evidence, that no single condition or combination of conditions other than detention reasonably will assure the safety of others or the community. Specifically, Judge O'Hara's Order applied the statutory factors specified in 18 U.S.C. § 3142(g), finding that the following factors favored detention: (a) the nature and

circumstances of the crimes charged; (b) the government's "strong case" against Mr. Sanders; (c) several aspects of Mr. Sanders's personal history and characteristics disfavor pretrial release (*i.e.*, he has a history of violent behavior and drug abuse, he has a significant prior criminal record, he has a history of failing to appear at court proceedings, and he previously has failed to comply with conditions of release); (d) Mr. Sanders was on probation when he allegedly committed the criminal offenses charged by the Indictment; and (e) the threat of continued, armed drug trafficking, if released, poses a serious risk of danger to the community. Doc. 10 at 1–2.

Judge O'Hara also relied on the rebuttable presumptions imposed under 18 U.S.C. § 3142(e) because the grand jury found probable cause to believe Mr. Sanders had committed: (a) an offense with a maximum prison terms of 10 years or more; and (b) a § 924(c) offense, *i.e.*, use of a firearm in connection with drug trafficking. Specifically, he held that Mr. Sanders had rebutted the statutory presumption but "[n]evertheless, the presumptions remain a factor (among all others) to be considered" in the detention decision. *Id.* at 2.

Because Mr. Sanders asserts two alternative bases for release from pretrial detention, the court addresses each argument separately, below.

**I.      Motion for Review of Detention Order**

When a defendant moves for review of a detention order, the court "must make an independent determination of the proper pretrial detention [decision] or conditions of release." *United States v. Rueben*, 974 F.2d 580, 585–86 (5th Cir. 1992) (cited in *United States v. Cisneros*, 328 F.3d 610 (10th Cir. 2003)). Mr. Sanders requested a full in person hearing, which the court held on March 26, 2020. Doc. 17. The parties elected to proceed by proffer, meaning that each party's counsel offered statements each could show by evidence if the opposing party invoked its right to a purely evidentiary presentation. Neither party objected to the contents of

2

the other's proffer.  On the government's request, the court takes judicial notice of (1) the Indictment, (2) Mr. Sanders's Pretrial Services Report, and (3) the government's evidence proffered at the February 26, 2020 detention hearing before Judge O'Hara.

The government's proffer asserted that on September 25, 2017, Kansas City, Kansas police officers discovered a stolen black truck.  Officers also saw an unknown individual holding a green bag leave the truck and enter a nearby house.  The officers spoke with the stolen truck's passenger, who confessed that he had smoked marijuana with another person, but the passenger did not identify that person.  Officers approached the house the unidentified man had entered and found a sign on the door asking visitors to call first and providing a phone number.  When officers called the number, they saw the unknown individual from the truck leave the house with the green bag in tow and enter the woods behind the house.  The officers pursued him, but they could not locate him.  They recovered the green bag from the woods.  The green bag contained marijuana, digital scales, several cell phones (including one corresponding to the phone number posted on the sign on the front door of the house), pill bottles, a loaded handgun, a Missouri driver's license issued to Roderick Sanders, and a Visa credit card in Mr. Sanders's name.  Later, officers returned to the residence and executed a search warrant.  Their search found 18 firearms, more than 1,000 rounds of ammunition, digital scales, methamphetamine packaged for resale and in bulk, and mail addressed to Mr. Sanders, among other items.

The pretrial services report corroborates much of what the government asserts about Mr. Sanders's history and characteristics.  Since Mr. Sanders turned 18 years old some 11 years ago, he has had many significant convictions.  His convictions include fleeing from law enforcement officers (2009), possessing a firearm while being an unlawful user of controlled substances

(2010), and a more recent conviction for unlawful possession and use of a weapon (2015). He also has a currently pending charge for felony possession of a controlled substance.

Besides these convictions, Mr. Sanders has failed to comply with conditions of release. Most notably, after his 2010 gun conviction in this court, the United States Probation Office accused Mr. Sanders of violating a mandatory condition of his term of supervised release. Specifically, the probation office accused Mr. Sanders of violating the condition requiring him "not [to] commit another federal, state, or local crime." *See* Pet. for Warrant or Summons at 1, *United States v. Sanders*, No. 10-20034 (D. Kan. Feb. 3, 2011), ECF. No. 35. Specifically, this Petition asserted that on February 2, 2011, Kansas City, Kansas police alleged that Mr. Sanders "fired a gun; missing the intended individual, and striking an unintended victim, who had to be hospitalized for injuries sustained in the shooting." *Id.* In June 2012, Mr. Sanders stipulated to this violation. *See* Revocation J. at 1, *Sanders*, No. 10-20043 (D. Kan. June 1, 2012), ECF. No. 44. He received a 24-months prison sentence for this violation. *Id.*[1] Also, Mr. Sanders was under supervision by the Jackson County Circuit Court in Kansas City, Missouri when, according to the government's proffer, he engaged in the conduct charged by this case's Indictment.

Mr. Sanders responded with his own proffer. His counsel proffered that the government's evidence of his alleged flight from law enforcement on the date charged in the Indictment is circumstantial. Mr. Sanders also asserts the analysis mandated by 18 U.S.C. § 3142 favors his release. Namely, he asserts that his personal history shows he is not a flight risk. He asserts that his only conviction for evading law enforcement was more than 10 years

---

[1] The Pretrial Services Report corroborates this event. It reports that Mr. Sanders stood trial on a state charge for "Criminal Discharge of a Firearm at Occupied Dwelling." This trial ended in a mistrial and about one month later, the state dismissed this charge "per [a] plea" in another case.

4

earlier and does not reflect Mr. Sanders's potential risk now. Also, Mr. Sanders cares for his deceased fiancé's legally blind mother and supports his children. He is working with a health aide company, assisting disabled individuals in their homes. Mr. Sanders also asserts that he has made regular appearances on a charge pending before a Saline County, Missouri court over the last eight months.

After considering the parties' proffers and conducting a *de novo* review of the governing statutory factors, the court reaches the same conclusions as Judge O'Hara. The court finds the government has shown, by clear and convincing evidence, that no single condition or combination of conditions reasonably will assure the safety of the community. In significant measure, the court reaches these conclusions because: (a) the government's evidence against Mr. Sanders is strong; (b) Mr. Sanders's past conduct demonstrates that the court cannot count on him to comply with conditions of release; (c) Mr. Sanders has a history of violent behavior and a substantial criminal history; and (d) he has proposed a release plan that is thin on details and offers little assurance of stability, *i.e.*, he relies on others for a place to live, and has a history of failing to abide by court conditions.

For these reasons, and after considering all of the statutory factors specified in § 3142(g), the court denies Mr. Sanders's motion. The court also finds that no condition or combination of conditions will assure the safety of others and the community.

## II.     Motion for Temporary Release

Alternatively, Mr. Sanders seeks temporary release under 18 U.S.C. § 3142(i) because of the current COVID-19 pandemic. Doc. 15. Mr. Sanders asserts that he is at "a great[er] risk for contracting [the] dangerous disease" while detained at CoreCivic at Leavenworth, Kansas, than if he was released from custody. *Id.* at 1. His brief cites the increasing infections in Kansas and

asserts that "[c]onditions of pretrial confinement create the ideal environment for the transmission of contagious disease." *Id.* at 2–3. He also argues the conditions of his confinement put him in close contact with 26 other people, and CoreCivic has not provided adequate hygiene supplies to protect him and others from the virus. The government opposes this request, arguing that Mr. Sanders has not met his burden under the statute. *See generally* Doc. 16. Instead, the government asserts, Mr. Sanders cites statistics that "apply to every pretrial detainee" and, because there are no reported cases of COVID-19 at CoreCivic, Mr. Sanders's motion is not ripe. *Id.* at 19. And, the government contends, Mr. Sanders's motion should fail because he seeks indefinite release, which the statute does not authorize.

### A. Legal Standard

18 U.S.C. § 3142(i) provides:

> The judicial officer may by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

The defendant has the burden to show that circumstances warranting temporary release under § 3142(i) exist. *Cf. United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) ("[T]he defendant does bear the burden to show that his release is necessary for preparation of the person's defense." (citation and internal quotations omitted)).

While most courts that have considered a motion under § 3142(i) have done so in the context of a defendant's request to assist with his defense, *see id.*; *United States v. Jeffries*, No. 3:10-CR-100, 2011 WL 182867, at *4 (E.D. Tenn. Jan. 20, 2011) ("[T]he [c]ourt finds that the [d]efendant has failed to show that his release is necessary for the preparation of his defense."), a few courts have considered requests for temporary release in light of the current COVID-19 pandemic. *See, e.g.*, *United States v. Stephens*, No. 15-cr-95 (AJN), 2020 WL 1295155, at *2

6

(S.D.N.Y. Mar. 19, 2020) (temporarily releasing defendant because he demonstrated that "the obstacles the current public health crisis poses to the preparation of [his] defense" were compelling under 18 U.S.C. § 3142(i)). And, Magistrate Judge Mitchell considered this issue in a carefully and thoroughly researched opinion. *See* Mem. and Order, *United States v. Clark*, No. 19-40068-HLT (D. Kan. Mar. 25, 2020), ECF. No. 154 (denying defendant's motion for temporary release because of the COVID-19 pandemic and collecting cases).

There is relatively little guidance about what qualifies as a "compelling reason" for temporary release under § 3142(i). Some courts have considered a defendant's serious medical condition compelling. *See, e.g.*, *United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (noting that if defendant's medical condition worsens, he may "in extraordinary circumstances" seek temporary relief under § 3142(i)); *United States v. Hamilton*, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (noting § 3142(i) "has been used sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries"); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143, 144–47 (D.P.R. 2002) (temporarily releasing a partial paraplegic defendant with a fist-sized gunshot wound into his relative's care). And, the courts that have considered a defendant's medical condition in light of COVID-19 concerns did so as part of the traditional detention analysis under § 3142(f). *See United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *1 (D. Md. Mar. 17, 2020) (conducting an individualized assessment of defendant under the Bail Reform Act, and concluding defendant's disclosed "asthma, high blood pressure and diabetes was insufficient to rebut the government's proffer that sufficient precautionary measures were in place to protect inmates from COVID-19); *United States v. Stephens*, 15-cr-95 (AJN), 2020 WL 1295155, at *1 (S.D.N.Y. Mar. 19, 2020) (reconsidering defendant's bail conditions

7

due to changed circumstances under 18 U.S.C. § 3142(f) and concluding that COVID-19 was a compelling reason to temporarily release defendant under § 3142(i) where defendant could not communicate with counsel while incarcerated because of social distancing measures).

### B. Discussion

Although the court is fully mindful of the unprecedented characteristics of the COVID-19 pandemic, Mr. Sanders is not entitled to temporary release under § 3142(i) because he has general and speculative fears about COVID-19. The court must make individualized findings under § 3142(i) and will consider the following factors: "(1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others." Mem. and Order at 6, *Clark*, No. 19-400068, ECF No. 135. The court considers these factors as a guide when deciding whether temporary release under § 3142(i) is necessary for a "compelling reason."

#### 1. The original grounds for Mr. Sanders's Pretrial Detention.

As discussed in Section I, above, the court already has affirmed the original grounds for Mr. Sanders's pretrial detention. Specifically, the court considered the government's evidence against Mr. Sanders, Mr. Sanders's prior evasive conduct, his extensive criminal history, his history of violent behavior, and his proposed release plan. This factor weighs against Mr. Sanders.

#### 2. The specificity of Mr. Sanders's COVID-19 concerns.

Next, the court turns to Mr. Sanders's COVID-19 concerns. Mr. Sanders contends his "health, safety and welfare [are] at risk" if he remains at CoreCivic. Doc. 15 at 2. He cites the

severity of the pandemic and the social distancing order issued by Kansas Governor Laura Kelly. Next, he contends that inmates are at a "heightened risk" of contracting the virus and, citing examples in China, Montana, and New York, he contends "it is not a question of *if* [CoreCivic] will report cases of COVID-19, but *when*." *Id.* at 3, 6. But, Mr. Sanders's concerns remain generalized. He does not argue he has any elevated personal risk factors for COVID-19, other than his physical presence in CoreCivic. And, as the government contends, Mr. Sanders's assumption that his risk for COVID-19 is greater inside CoreCivic than outside of it is speculative. Doc. 16 at 20. As the cases outside of CoreCivic continue to rise, there is still no reported COVID-19 case in CoreCivic. *Id.* Mr. Sanders argues that CoreCivic is not prepared to protect him from the virus, but he does not explain how the screening measures CoreCivic has implemented are inadequate to protect him. Nor does he explain how those screening procedures differ from the measures recommended to the general public by the Centers for Disease Control.

At bottom, Mr. Sanders fails to make any arguments other than speculation. He argues that his risk of contracting COVID-19 is greater at CoreCivic because he cannot practice social distancing and CoreCivic is not taking adequate precautions against the virus. The court recognizes that avoiding crowds and taking adequate precautions is a crucial step to prevent an outbreak of COVID-19. *See How to Protect Yourself*, CTR. FOR DISEASE CONTROL (Mar. 18, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html; *see also Coronavirus disease (COVID-19) technical guidance: Infection prevention and control*, WHO, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/technical-guidance/infection-prevention-and-control (last visited Mar. 30, 2020). But CoreCivic has taken steps to implement guidance from both the Center for Disease Control and the World Health Organization. *How CoreCivic is Managing COVID-19*, CORECIVIC, https://www.corecivic.com/

hubfs/_files/CoreCivic%20Response%20to%20COVID-1.pdf (last visited Mar. 30, 2020) (noting that CoreCivic has "implemented current guidelines from the CDC and World Health Organization for COVID-19 at all CoreCivic facilities"). Other than Mr. Sanders's unsupported contention that CoreCivic is not following its own guidelines, he has asserted no specific concern about his COVID-19 risk, *e.g.*, a personal health risk factor, or a known case of COVID-19 in his CoreCivic facility. This factor thus weighs against Mr. Sanders.

### 3. The extent to which Mr. Sanders tailored his proposed release plan to mitigate or exacerbate his overall COVID-19 risks.

This third factor also weighs against Mr. Sanders. Section 3142(i) permits the court to temporarily release a defendant if it is necessary for a compelling reason. But Mr. Sanders's release request does not explain how his release would mitigate his overall exposure to COVID-19. Indeed, Mr. Sanders relies on his speculative assumption that his risk of contracting COVID-19 is higher inside CoreCivic than if he is released. But that assumption is not necessarily accurate. And, Mr. Sanders has not explained how his proposed living arrangement outside of CoreCivic would mitigate his potential COVID-19 exposure. He does not identify the COVID-19 precautions he would take, if released, or how others in the home would help mitigate his risks. Also, Mr. Sanders believes he can return to his job as a home health aide, where he assists disabled individuals in their homes. But that cuts against Mr. Sanders's argument. His position as a home health worker could increase his exposure to the virus—he would have to leave his house, travel to his workplace, and come within six feet of other people during his work day. Thus, this factor also weighs against Mr. Sanders.

### 4. The likelihood Mr. Sanders's proposed release plan would increase COVID-19 risks to others.

Finally, the court considers whether Mr. Sanders's release plan would increase COVID-19 risks to others. This factor does not play a significant role in the analysis here. But to the extent that it applies, it cuts against Mr. Sanders. Mr. Sanders has proposed location monitoring while he is released. But this arrangement would require some interaction that is not consistent with personal distancing. *See Martin*, 2020 WL 1274857, at *4 (noting that location monitoring "provides little useful information about what [defendant] is doing" and poses a risk to Pretrial Services personnel "given the current recommendations regarding implementation of social distancing"). Also, if released, Mr. Sanders contends he can return to his job as a personal home health aide, assisting disabled individuals in their homes. It is reasonable to infer that this job would require personal interactions with patients, which do not honor mitigating strategies such as limiting interaction and social distancing to some degree. Releasing Mr. Sanders so he can return to this job could increase Mr. Sanders's exposure to COVID-19.

### C. Conclusion

On balance, Mr. Sanders has not shown a compelling reason that persuades the court that temporary release is necessary under § 3142(i). His arguments are speculative. The court's identified factors weigh against his release. And, it appears that Mr. Sanders, if released, would merely be trading one set of risks (social distancing impediments at CoreCivic) for others (increased exposure to the public through work and caring for his household). The court concludes that Mr. Sanders has not shown a compelling reason for temporary release. So, the court denies his motion for temporary release.

**IT IS THEREFORE ORDERD BY THE COURT THAT** defendant Roderick Sanders's Motion to Review Detention Order (Doc. 11) is denied.

**IT IS SO ORDERED.**

**Dated this 31st day of March, 2020, at Kansas City, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**